1
2
3
4

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION _____/ | MDL No. 3084 |
| This Order Relates To: | **PRETRIAL ORDER NO. 29: ORDER REGARDING UBER'S MOTION TO TRANSFER** |
| <u>A.R. v. Uber Technologies, Inc., et al.</u>, No. 3:24-cv-01827-CRB | Re: Dkt. No. 3020 |
| <u>D.J. v. Uber Technologies, Inc., et al.</u>, Case No. 3:24-cv-07228-CRB | |
| <u>A.G. v. Uber Technologies, Inc.</u>, et al., Case No. 3:24-cv-01915-CRB | |
| <u>A.R. v. Uber Technologies, Inc., et al.</u>, Case No. 3:24-cv-07821-CRB | |
| <u>B.L. v. Uber Technologies, Inc., et al.</u>, Case No. 3:24-cv-07940-CRB | |
| <u>C.L. v. Uber Technologies, Inc., et al.</u>, Case No. 3:23-cv-04972-CRB | |
| <u>J.E. v. Uber Technologies, Inc., et al.</u>, Case No. 3:24-cv-03335-CRB | |
| <u>Jane Doe QLF 0001 v. Uber Technologies, Inc., et al.</u>, Case No. 3:24-cv-08387-CRB | |
| <u>Jaylynn Dean v. Uber Technologies, Inc., et al.</u>, Case No. 3:23-cv-06708-CRB | |

United States District Court
Northern District of California

<u>K.E. v. Uber Technologies, Inc., et al.</u>, Case No. 3:24-cv-05281-CRB

<u>Amanda Lazio v. Uber Technologies, Inc.</u>, Case No. 3:24-cv-08937-CRB

<u>LCHB128 v. Uber Technologies, Inc., et al.</u>, No. 3:24-cv-07019-CRB

<u>T.L. v. Uber Technologies, Inc., et al.</u>, Case No. 3:24-cv-09217-CRB

<u>WHB 318 v. Uber Technologies, Inc.</u>, Case No. 3:24-cv-04889-CRB

<u>WHB 407 v. Uber Technologies, Inc., et al.</u>, Case No. 3:24-cv-05028-CRB

<u>WHB 832 v. Uber Technologies, Inc.</u>, Case No. 3:24-cv-04900-CRB

<u>WHB 1486 v. Uber Technologies, Inc., et al.</u>, Case No. 3:24-cv-04803-CRB

<u>WHB 1876 v. Uber Technologies, Inc., et al.</u>, Case No. 3:24-cv-05230-CRB

<u>WHB 1898 v. Uber Technologies, Inc., et al.</u>, Case No. 3:24-cv-05027-CRB

<u>Jane Roe CL 68 v. Uber Technologies Inc., et al.</u>, Case No. 3:24-cv-06669-CRB

## I.    BACKGROUND

On October 4, 2023, the JPML created MDL No. 3084, centralizing 22 actions in this Court for coordinated pretrial proceedings. <u>In re Uber Techs., Inc., Passenger Sexual Assault Litig.</u>, No. MDL 3084, 2023 WL 6456588 (J.P.M.L. Oct. 4, 2023) ("Transfer Order").  Last year, the Court ruled on a motion regarding issues stemming from Uber's

1

1  Terms of Use ("TOU"), which all consumers must agree to before using Uber's services.

2  See PTO 15 (dkt. 543).  The relevant version of Uber's TOU contains a "Forum Selection

3  Clause," which states:

4  > Notwithstanding the foregoing, any dispute, claim, or controversy arising out
   > of or relating to incidents or accidents resulting in personal injury (including

5  > but not limited to sexual assault or harassment claims) that you allege occurred

6  > in connection with your use of the Services, whether before or after the date
   > you agreed to these Terms, shall be brought exclusively in the state or federal

7  > courts in the state in which the incident or accident occurred, notwithstanding

8  > that other courts may have jurisdiction over the parties and subject matter, and
   > except as may be otherwise provided in the [Arbitration Agreement or

9  > supplemental terms applicable to your region], to the extent permitted by law.

10  Sauerwein Decl. Ex. A (dkt. 3020-3), at 14.  "Services" are defined in the TOU as

11  "services rendered by Uber that facilitate your connection to independent third party

12  providers, including drivers." Sauerwein Decl. Ex. A, at 6.  Based on that forum selection

13  clause, Uber moved to transfer Plaintiffs' cases in which the alleged incidents occurred

14  outside of California under 28 U.S.C. § 1404(a).  See PTO 15 at 33.  The Court declined to

15  rule on that aspect of Uber's motion at the time given the MDL was in its nascent pretrial

16  stages.  Id. at 33–36.

17  In the intervening time period, the parties selected twenty combined bellwether

18  cases to be worked up as representative samples for the broader MDL pool.  See dkts.

19  2373, 2375.  Sixteen of those Bellwether Plaintiffs selected the Northern District of

20  California as their designated venue for trial.  See Mot. (dkt. 3020) at 4. Of those sixteen,

21  thirteen Plaintiffs allege that the assault or harassment underlying their claims occurred in

22  a state other than California: WHB 1486, WHB 1876, LCHB128, Jaylynn Dean, C.L.,

23  A.G., WHB 1898, A.R., T.L., WHB 407, WHB 318, WHB 832, and J.E.  Id. at 3.  On May

24  16, 2025, in anticipation of the approaching close of fact discovery and beginning of Trial

25  Wave 1 bellwether trials, Uber filed its Motion to Transfer those thirteen cases to the

26  districts where the alleged incidents occurred.  Id. at 5.  Plaintiffs timely filed their

27  Opposition in response, see Opp'n (dkt. 3264), and Uber in turn filed its Reply, see Reply

28  (dkt. 3372).

1    In between the completion of briefing and this Order, the Court ruled on Uber's

2    Motion to Dismiss Plaintiffs' Amended Bellwether Complaints.  See PTO 28 (dkt. 3441).

3    As part of that order, the bellwether case WHB 1876 was dismissed in full.  See id. at 27.

4    Therefore, the Court need only consider Uber's Motion to Transfer as it applies to the

5    remaining twelve Bellwether Plaintiffs identified by Uber.

6    Having received the parties' positions, the Court now decides Uber's Motion to

7    Transfer.

8    **II.    LEGAL STANDARD**

9    "For the convenience of parties and witnesses, in the interest of justice, a district

10   court may transfer any civil action to any other district or division where it might have

11   been brought."  28 U.S.C. § 1404(a).  District courts enjoy broad discretion in considering

12   motions to transfer venue and are to adjudicate motions for transfer according to

13   "individualized, case-by-case consideration of convenience and fairness."  Van Dusen v.

14   Barrack, 376 U.S. 612, 622 (1964).  Usually, district courts consider factors such as "the

15   location where the relevant agreements were negotiated and executed, the state that is most

16   familiar with the governing law, and the plaintiff's choice of forum."  Jones v. GNC

17   Franchising, Inc., 211 F.3d 495, 211 498–99 (9th Cir. 2000).  A valid forum selection

18   clause changes the analysis, however, because it trumps the plaintiff's choice of forum and

19   any consideration of private interests (that is, concerns about the forum's convenience for

20   parties or witnesses).  Atl. Marine Constr. Co. v. U.S. Dist. Ct., 571 U.S. 49, 63–64 (2013).

21   A court may still consider arguments related to public-interest factors in such

22   circumstances, but those "factors will rarely defeat a transfer motion" grounded in a valid

23   forum selection clause.  Id. at 62.

24   **III.    DISCUSSION**

25       **A.    General Enforceability of the Forum Selection Clause**

26           **1.    Validity of the Terms of Use**

27   To evaluate the merits of Uber's Motion to Transfer, the Court must first determine

28   whether Uber's Terms of Use—and by extension the included forum selection clause—

United States District Court
Northern District of California

3

constitutes a valid and enforceable contract.  "Online contracts are subject to the same

elemental principles of contract formation as paper contracts."  Chabolla v. ClassPass Inc.,

129 F.4th 1147, 1154 (9th Cir. 2025).  Uber's TOU and other digital contracts like it are

only enforceable if "(1) the website provides reasonably conspicuous notice of the terms to

which the consumer will be bound; and (2) the consumer takes some action, such as

clicking a button or checking a box, that unambiguously manifests his or her assent to

those terms."  Id. at 1154–55 (quotation omitted).

Both prongs are satisfied by Uber's Terms of Use.  The Court has previously

determined that the TOU is a "clickwrap" agreement, see PTO 15 at 4 ("The updated

agreement is presented to users in the form of a clickwrap agreement."), which "[c]ourts

routinely uphold . . . for the principal reason that the user has affirmatively assented to the

terms of agreement by clicking 'I agree,'"  Meyer v. Uber Techs., Inc., 868 F.3d 66, 75 (2d

Cir. 2017); see also Berman v. Freedom Fin. Network, LLC, 30 F.4th 849, 856 (9th Cir.

2022) ("[C]ourts have routinely found clickwrap agreements enforceable.").  Other courts

faced with Uber's TOU have arrived at the same conclusion.  See Christian v. Uber Techs.,

Inc., 2025 WL 833130, at *4 (D.D.C. Mar. 17, 2025) ("[T]he Court agrees that Uber's

pop-up screen provided a reasonable person with notice that he was entering into a

contract."); Good v. Uber Techs., Inc., 234 N.E.3d 262, 277 (Mass. 2024) ("Uber's

interface focused the reasonably prudent consumer on the terms being offered by Uber for

the continued use of its services."); Wu v. Uber Techs., Inc., 260 N.E.3d 1060, 1076 (N.Y.

App. Ct. 2024) ("Uber's clickwrap process put plaintiff on inquiry notice of the January

2021 terms.").

There is no compelling reason to break from that precedent here.  Users accessing

the Uber app for the first time encounter a "blocking pop-up screen" containing the TOU

that provides "reasonably conspicuous notice" of the contract, and Plaintiffs manifested

their assent to the terms by checking a box and clicking "Confirm" in the pop-up screen.

See PTO 15 at 4–5 (describing the Uber Terms of Use clickwrap agreement); Sauerwein

Decl. Exs. D–Q (dkts. 3020-6–19) (records of Plaintiffs' assent to the TOU).  The forum

selection clause itself contains straightforward language and is prominently displayed within the Terms.  See Waypoint Yachts v. Azimut-Benetti, S.p.A., 2006 WL 8455420, at *7 (S.D. Cal. Feb. 27, 2006) (holding that "Plaintiff [could not] effectively argue that it was surprised by the inclusion of the forum-selection clause" in part because it was "clearly identified . . . [and] set under [a] heading" in the contract).  Accordingly, the Terms of Use and its component forum selection clause constitute a valid, enforceable contract between Uber and Plaintiffs.

### 2.    Coverage of Plaintiffs' Claims by the Forum Selection Clause

Not only is Uber's forum selection clause facially enforceable, it also undoubtedly encompasses Plaintiffs' claims.  Uber's forum selection clause explicitly governs "any dispute, claim, or controversy arising out of or relating to incidents or accidents resulting in personal injury (including but not limited to sexual assault or harassment claims) that [the user] allege[s] occurred in connection with [the user's] use of the Services."  "Services" as defined in the Terms of Use include "services" like Uber rides "rendered by Uber that facilitate your connection to independent third party providers."  Sauerwein Decl. Ex. A, at 6.  Each Bellwether Plaintiff alleges that they were sexually assaulted or harassed "in connection with an Uber ride."  See, e.g., J.E., Am. Compl. ¶ 5.  The Court thus agrees with Uber that "Plaintiffs concede the facts necessary for the forum-selection clause to apply."  Mot. at 9.

### 3.    Extraordinary Circumstances

A forum selection clause that is part of an enforceable contract and covers the claims at issue "should control except in unusual cases."  Atl. Marine, 471 U.S. at 63-64.  "[O]nly under extraordinary circumstances unrelated to the convenience of the parties should a motion to enforce a forum-selection clause be denied."  Yei A. Sun, 901 F.3d at 1088 (quotation omitted) (emphasis added).  The Ninth Circuit in Yei A. Sun laid out three such "extraordinary circumstances": "(1) the clause is invalid due to 'fraud or overreaching,' (2) 'enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision,' or (3) 'trial in

1  the contractual forum will be so gravely difficult and inconvenient that [the litigant] will

2  for all practical purposes be deprived of [her] day in court.'"  Id. (quoting M/S Bremen v.

3  Zapata Off-Shore Co., 407 U.S. 1, 15 (1972)).

4        Plaintiffs argue against the application of the Yei A. Sun test, instead urging the

5  Court to undertake a broader analysis of whether the forum selection clause is

6  "'unreasonable' under the circumstances."  Opp'n at 7 (quoting Great Lakes Ins. SE v.

7  Raiders Retreat Realty Co., LLC, 601 U.S. 65, 71 (2024)).  But Plaintiffs fail to cite any

8  case law finding a forum selection clause unenforceable for reasons other than those set

9  out in Yei A. Sun and Bremen.  In fact, several of the cases Plaintiffs do cite specifically

10  adopt the three-part test.  Gemini Techs., Inc. v. Smith & Wesson Corp., 931 F.3d 911, 915

11  (9th Cir. 2019) (explaining that Ninth Circuit applies the Yei A. Sun test); AQuate II LLC

12  v. Myers, 100 F.4th 1316, 1323 (11th Cir. 2024) (holding that the Bremen factors "will

13  rarely invalidate a forum selection clause"); Petersen v. Boeing Co., 715 F.3d 276, 280

14  (9th Cir. 2013) (listing the three Bremen exceptions); Reply at 6 (collecting cases).

15        Accordingly, the Court considers each of the three Yei A. Sun "extraordinary

16  circumstances" to determine whether they are present in this case.  Plaintiffs do not, and

17  cannot, argue that Uber's forum selection clause would contravene the strong public policy

18  of California or deprive the Bellwether Plaintiffs of their day in court.  This leaves one

19  remaining Yei A. Sun factor: whether the clause is a product of fraud or overreach by

20  Uber.  "To establish the invalidity of a forum selection clause on the basis of fraud or

21  overreaching, the party resisting enforcement must show that the inclusion of that clause in

22  the contract was the product of fraud or coercion."  Petersen, 715 F.3d at 282 (emphasis in

23  original) (quotations omitted).  Plaintiffs fail to make such a showing.  The content of

24  Uber's general safety marketing materials and statements, see Opp'n at 13–15, is irrelevant

25  to whether the inclusion of the forum selection clause in the Terms of Use was fraudulent.

26  See Appling v. State Farm Mut. Auto. Ins. Co., 340 F.3d 769, 777 (9th Cir. 2003)

27  ("[E]xtrinsic evidence is not admissible to add to, detract from, or vary the terms of a

28  written contract.").  Plaintiffs do not dispute that the forum selection clause is plainly

6

visible within the TOU, nor do they argue that they agreed to the TOU under duress or that they were not given adequate opportunity to review the terms. See Petersen, 715 F.3d at 283 (holding that forum selection clause was product of overreach where plaintiff's supervisor "did not permit him time to read the agreement and told him that failure to sign it would result in his being forced to return immediately to the United States [from Saudi Arabia] at his own expense"). And Plaintiffs admit that whether or not they actually read Uber's TOU "is no obstacle to contract formation." Opp'n at 14; see also Molina v. Scandinavian Designs, Inc., 2014 WL 1615177, at *3 (N.D. Cal. Apr. 21, 2014) ("[O]ne who accepts or signs an instrument, which on its face is a contract, is deemed to assent to all its terms, and cannot escape liability on the ground that he has not read it."). Uber provided consumers with ample occasion to review the Terms of Use, including the forum selection clause, before accepting the agreement; should a consumer have a problem with the terms, they may simply not use the service. That Plaintiffs or other consumers like them may not have taken advantage of that opportunity does not constitute fraud or overreach on Uber's part.

It is evident that none of the Yei A. Sun exceptions apply in this case. But even if the Court were to apply a broader "unreasonableness" test as Plaintiffs request, their alternative theories of "extraordinary circumstances" still fall well short of justifying an exception to the enforceability of Uber's forum selection clause. First, Plaintiffs claim that the forum selection clause is "unreasonable" because "[n]o one can be presumed to make a reasoned decision to sue in the state where they are sexually assaulted because their baseline assumption is that they will not be sexually assaulted." Opp'n at 9. This specious argument ignores the great weight given to "the local interest in having localized controversies decided at home" in any forum analysis and must be rejected. Atl. Marine, 571 U.S. at 62 n.6 (quotation omitted). Uber is correct that "[s]eeking to litigate sensitive sexual-assault claims where the relevant evidence is likely most readily available is not in any sense unfair," Reply at 7, and indeed may advantage Plaintiffs by providing them with "a home court advantage against [the] outsider[]" Uber, Ehrman v. Cox Commc'ns, Inc.,

932 F.3d 1223, 1226 (9th Cir. 2019); see also Bloom v. Express Servs. Inc., 2011 WL 1481402, at 3–4 (N.D. Cal. Apr. 19, 2011) (finding that "convenience of the witnesses" and "ease of access to evidence" factors weighed against transferring case from forum where the incident occurred).[1]

Second, Plaintiffs argue that Uber failed to reasonably communicate the forum selection clause to consumers based on the inclusion of allegedly conflicting language within the "Arbitration Agreement" section of the Terms of Use. See Opp'n at 10–12. The Arbitration Agreement states in relevant part: "[T]his Arbitration agreement shall not require arbitration of . . . individual claims of sexual assault or sexual harassment occurring in connection with your use of the Services . . . . Where your claims are brought and litigated to completion . . . in a court of competent jurisdiction, Uber agrees to honor your election." Sauerwein Decl., Ex. A § 2(b) (emphasis added). Plaintiffs assert that the language "Uber agrees to honor your election" must control over the "Choice of Forum" provision. See Opp'n at 11. But the plain reading of the highlighted language, which is included under the subsection titled "Exceptions to Arbitration," is that Uber will defer to a consumer's "election" between bringing their claims via arbitration or litigation, not between litigating in the forum where the alleged incident occurred or somewhere else. To find otherwise would render the forum selection clause null, which goes against the preference of California law to "give[] effect to all of a contract's provisions." Schertzer v. Bank of Am., NA, 109 F.4th 1200, 1208 (9th Cir. 2024); see also Carson v. Mercury Ins. Co., 210 Cal. App. 4th 409, 420 (2012) ("An interpretation which gives effect to all provisions of the contract is preferred to one which renders part of the writing superfluous,

---

[1] There is similarly no evidence that Uber operated in "bad faith" by amending the Terms of Use to include the forum selection clause. See Opp'n at 12–13. Plaintiffs offer only unsupported speculation regarding Uber's "presumptively improper" motives for adding the provision. Id. at 12. Much like the Supreme Court in Carnival Cruise held that "[a]ny suggestion of . . . a bad-faith motive" by the defendant in designating Florida as the default forum for litigation was "belied by [the] fact[] . . . [that] many of its cruises depart from and return to Florida ports," 499 U.S. 585, 595 (1991), it is difficult to conceive how Uber agreeing to litigate alleged incidents stemming from its rides in the very location where the rides occurred is an "extraordinary" example of bad faith that would justify setting aside the valid forum selection clause.

United States District Court
Northern District of California

1 | useless or inexplicable." (citation omitted)).[2]

2 |      Therefore, whether analyzed through the three-part <u>Yei A. Sun</u> test or a broader

3 | reasonableness inquiry, there are no "extraordinary circumstances" here that necessitate an

4 | exception to Uber's valid forum selection clause.

5 | **B. Public-Interest Factors**

6 |      Plaintiffs assert that even should the Court find Uber's forum selection clause to be

7 | valid and enforceable, the public-interest factors weigh in favor of denying Uber's Motion

8 | to Transfer. "Public-interest factors" considered by courts when deciding transfer motions

9 | "may include the administrative difficulties flowing from court congestion; the local

10 | interest in having localized controversies decided at home; and the interest in having the

11 | trial of a diversity case in a forum that is at home with the law." <u>Atl. Marine</u>, 571 U.S. at

12 | 62 n.6 (quotation omitted and cleaned up). Plaintiffs acknowledge that a valid forum

13 | selection clause will only "'rarely'" be superseded by the public interest factors. Opp'n at

14 | 23 (quoting <u>Id.</u> at 64 ("Although it is conceivable in a particular case that the district court

15 | would refuse to transfer a case notwithstanding the counterweight of a forum-selection

16 | clause, such cases will not be common." (quotation omitted))). Nonetheless, they argue

17 | that this in one such "uncommon" case. <u>Id.</u>

18 |      The Court disagrees. As Uber notes, Plaintiffs ignore entirely "the interest in

19 | having the trial . . . in a forum that is at home with the law" factor, which decidedly favors

20 | litigating these bellwether cases in the forum where the alleged incidents occurred. <u>See</u>

21 | Reply at 8. The fact that one of the three public-interest factors so clearly weighs in favor

22 | of Uber strongly suggests that this is not a "rare" situation where the forum selection

23 | clause should be overcome, and further analysis of the other two factors does nothing to

24 | change that conclusion. "[T]he local interest in having localized controversies decided at

25 | home" is undoubtedly greatest for the states in which the alleged assaults against Plaintiffs

26 |

27 | ---

28 | [2] Plaintiffs' argument that Uber's communication of the forum selection clause was rendered "ambiguous" by the company's safety marketing, <u>see</u> Opp'n at 12, fails because extrinsic evidence is not admissible for interpreting the written terms of the agreement, <u>see</u> <u>supra</u> at 6.

United States District Court
Northern District of California

occurred.  See, e.g., Armstrong v. Home Depot U.S.A., Inc., 1996 WL 382895, at *3 (N.D. Cal. July 1, 1996) ("All of the events [at issue in the litigation] occurred in the Eastern District . . . . Therefore, the local interest in having localized controversies decided at home . . . favor[s] transferring this case to the Eastern District of California."); Guardians v. Jewell, 2016 WL 796189, at *3 (D. Colo. Mar. 1, 2016) (finding that the local interest factor "encompasses the important interest in having local controversies decided where the controversy exists" (emphasis added)).  And the Court's own commitment to traveling across the nation to try these bellwether cases does not so drastically tilt the "court congestion" factor such that it can outweigh the predisposition under federal law towards enforcing a valid forum selection clause.  See Opp'n at 23–24.

Accordingly, the public-interest factors at play here do not overcome Uber's forum selection clause.

### C.    Enforceability of Forum Selection Clause as to Specific Plaintiffs

Beyond their arguments regarding the general enforceability of the forum selection clause, Plaintiffs raise several challenges to the applicability of the clause to individual Bellwether Plaintiffs.  The Court considers each argument in turn.

### 1.    Plaintiffs WHB 407 and WHB 823

The parties agree that Plaintiffs WHB 407 and WHB 823 did not assent to the forum selection clause until after their alleged assaults occurred.[3]  See Opp'n Appx. (dkt. 3264-1); Reply at 10.  Plaintiffs argue that it would be "neither reasonable nor fundamentally fair to apply a forum-selection clause retroactively to [these] sexual assault victims."  Opp'n at 15.  But the plain language of the forum selection clause, which "governs all disputes arising out of Uber's services, 'whether before or after the date you agreed to the Terms,'" must control.  Reply at 10 (quoting Sauerwein Decl. Ex. A, at 14).

Plaintiffs claim that the cases cited by Uber approving of the retroactive application of arbitration clauses are inapposite.  See Opp'n at 15–16; Mot. at 10 (collecting cases).

---

[3]  Plaintiffs' Opposition also discusses Plaintiff WHB 1876, whose case has since been dismissed.  See supra at 3.

United States District Court
Northern District of California

But "[a]n agreement to arbitrate . . . is, in effect, a specialized kind of forum selection clause," and courts generally treat the two clauses as analogous. <u>Scherk v. Alberto-Culver Co.</u>, 417 U.S. 506, 519 (1974). In any event, Uber does cite to several cases retroactively applying a forum selection clause in its Reply. <u>See</u> Reply at 10. These decisions turned largely on language within the forum selection clauses that "evince[d] an intent for expansive coverage" of all claims related to the contracting parties, not just those stemming from that particular agreement. <u>Warwick v. Schneider Nat'l, Inc.</u>, 2020 WL 5891407, at *4 (N.D. Ill. Oct. 5, 2020) (finding that forum selection clause covering "any dispute" between the parties justified retroactive application); <u>see also</u> <u>TradeComet.com LLC v. Google, Inc.</u>, 435 F. App'x 31, 35 (2d Cir. 2011) (finding that because "[t]he forum selection clause [was] . . . not limited to claims arising from or related to . . . the agreement itself," but instead "broadly include[d] any claim arising or related to 'Google Programs,'" the clause applied retroactively to plaintiff's claims); <u>Sarah v. Google LLC</u>, 2023 WL 6618266, at *4 (W.D. Mich. Oct. 11, 2023) (forum selection clause with the language "'[a]ny claim or dispute . . . that arises in whole or in part from the Service' was broad enough to apply retroactively"); <u>Marullo v. Apollo Associated Servs., LLC</u>, 515 S.W.3d 902, 906 (Tex. Ct. App. 2017) (finding intent for retroactivity in forum selection clause that applied to "any aspect of [plaintiff's] employment, whatsoever").

Not only does the TOU forum selection clause contain analogously broad language covering claims "arising out of or relating to incident or accidents . . . in connection with [the] use of [Uber's] Services," it goes one step further by explicitly stating that the clause applies to claims arising from "before or after the date" that the consumer agreed to the terms. Sauerwein Decl. Ex. A, at 14. Given this language, it cannot be said that applying the forum selection clause retroactively would be "neither reasonable nor fundamentally fair."[4] Therefore, Uber's Motion to Transfer as to Plaintiffs WHB 407 and WHB 823 is

_____

[4] Plaintiffs also argue that it would be uniquely unfair to apply the forum selection clause to WHB 823 retroactively because she "filed a state-court complaint on March 18, 2022, nearly four months before Uber says she assented to a forum-selection clause." Opp'n at 16. The Court need not address whether initiating litigation nullifies the retroactive effect

United States District Court
Northern District of California

1    granted.

2                    **2.      Plaintiffs Jaylynn Dean, T.L., WHB 1898, A.R.1, WHB 1486**

3            Next, Plaintiffs argue that because Plaintiffs Jaylynn Dean, T.L., WHB 1898,

4    A.R.1, and WHB 1486 agreed to the forum selection clause through <u>Uber Eats</u>, it would be

5    unreasonable to "impose[] forum restrictions for a lawsuit arising out of something

6    happening with '<u>Uber Rides</u>.'" Opp'n at 19 (emphasis added). Uber argues that the plain

7    text of the Terms of Use, which is the same whether a consumer assents via Uber Eats or

8    Uber Rides, controls: "'These Terms of Use (Terms) govern your access or use . . . of the

9    multi-sided digital marketplace platform ('Uber Marketplace Platform') and <u>any related</u>

10   <u>content or services</u> (. . . as more fully defined in Section 3).'" Reply at 12 (quoting

11   Sauerwein Decl. Ex. A, at 3) (emphasis added). Section 3 of the TOU then goes on to

12   define "services" as "services rendered by Uber that facilitate your connection to

13   independent third party providers, <u>including drivers and restaurants</u> . . . for the purchase of

14   services or goods, <u>such as transportation</u>." Sauerwein Decl. Ex. A, at 6 (emphasis added).

15          The Court agrees that this language clearly and unambiguously puts consumers on

16   notice that by accepting the TOU (and by extension the forum selection clause) for one

17   Uber service, consumers are in fact accepting the terms for all Uber services.[5] Plaintiffs

18   insist such a finding would be unfair because "[t]o the public and to passengers, Uber Eats

19   and Uber Rides are different and separate things . . . [with] different Apps offering distinct

20   services." Opp'n at 18. In practice, however, the dividing line between the two services is

21   not so clear. By agreeing to the TOU, consumers create one Uber account which is then

22   used for both Uber Rides and Uber Eats. And both apps contain a "Rides" and "Eats"

23   _____

24   of a valid forum selection clause, however, as "Plaintiffs do not claim that WHB [823]
     filed <u>this federal suit</u>—as opposed to a distinct state-court action—before agreeing to the
25   forum-selection clause." Reply at 11 (emphasis in original).
     [5]  Because the Court finds that the TOU unambiguously applies to all Uber services,
26   Plaintiffs' request for an evidentiary hearing is rejected. <u>See</u> Opp'n at 17 n.11; <u>Appling</u>,
     340 F.3d at 777 (9th Cir. 2003) ("[E]xtrinsic evidence is not admissible to add to, detract
27   from, or vary the terms of a written contract."). The situation here is distinguishable from
     <u>Petersen v. Boeing Co.</u>, as the plain language of the TOU forecloses Plaintiffs from
28   establishing a "factual contest" which would "wholly foreclose" their ability to litigate
     their claims and thereby necessitate an evidentiary hearing. 715 F.3d at 280–81.

                                                    12

United States District Court
Northern District of California

1  option at the top of their landing pages, giving users access to both services from either

2  app.

3      The overlap between Uber's two primary services thus renders <u>McKee v. Audible,</u>

4  <u>Inc.</u>, 2017 WL 4685039 (C.D. Cal. July 17, 2017) inapposite.  This is not a situation where

5  an agreement unexpectedly and unreasonably governs a consumer's "contractual

6  relationship with separate corporate entities, let alone one he or she has never dealt with."

7  <u>Id.</u> at *11.  Rather, the clear language of the Terms of Use, as well as the functional

8  intermingling of Uber Rides and Uber Eats, "afford notice" to a consumer that they are

9  being bound by an agreement with one corporate entity offering a variety of services.  <u>Id.</u>

10  Uber's Motion to Transfer is thus granted for Plaintiffs Jaylynn Dean, T.L., WHB 1898,

11  and WHB 1486.

12          **3.      Plaintiff A.R.1**

13      Plaintiffs argue in the alternative for Plaintiff A.R.1 that the forum-selection clause

14  is unenforceable as to her because she was a minor when she agreed to the TOU.  <u>See</u>

15  Opp'n at 20; <u>Santiago v. Philly Trampoline Park, LLC</u>, 291 A.3d 1213, 1224 (Pa. 2023)

16  ("Minors lack the capacity to agree to an arbitration agreement or any other contract in

17  their own right.").  Uber correctly notes that under Pennsylvania law, contracts by a minor

18  "'are <u>voidable</u> by the minor, not void.'"  Reply at 13 (quoting <u>Aetna Cas. & Sur. Co. v.</u>

19  <u>Duncan</u>, 972 F.2d 523, 526 (3d Cir. 1992) (emphasis added)).  "This means that a minor

20  can render a contract a nullity by disaffirming it at any point up until a reasonable time

21  after the minor attains his or her majority."  <u>Aetna</u>, 972 F.2d at 526.  But the Court finds

22  that by filing this case in the Northern District of California while she was still a minor,

23  rather than in Pennsylvania where the alleged incident occurred, A.R.1 effectively

24  disaffirmed the TOU and forum-selection clause.  <u>See</u> Case No. 3:24-cv-01827-CRB, dkt.

25  1.  Any other outcome here would contravene the express purpose of Pennsylvania law: to

26  act as a "'protective cloak' [] to safeguard the interests of the minor" when entering into a

27  contract.  <u>Pankas v. Bell</u>, 198 A.2d 312, 315 (Pa. 1962).  Accordingly, Uber's Motion to

28  Transfer is denied with respect to Plaintiff A.R.1.

United States District Court
Northern District of California

United States District Court
Northern District of California

### 4.      Plaintiffs C.L. and WHB 318

Plaintiffs assert that the forum selection clause is too vague to be enforceable as to Plaintiffs C.L. and WHB 318 because it does not clarify which forum controls when an incident occurs during a ride that crosses state lines.  See Opp'n at 20 ("The forum-selection clause requires disputes 'be brought exclusively in the state and federal courts in the State in which the incident or accident occurred.'" (quoting Sauerwein Decl., Ex. A § 7) (emphasis added)).  Uber is correct that because WHB 318 alleges she was assaulted "[a]fter the ride had crossed into North Carolina," there is no confusion over the appropriate forum for that case.  Reply at 13–14 (quoting WHB 318, Am. Compl. ¶ 9).  As for C.L., it cannot be true that "there is no single state in which the incident . . . occurred." Opp'n at 20.  The "state or federal courts in the State in which the incident or accident occurred" identifies a sufficiently ascertainable forum without giving rise to an indeterminate number of potential venues.  Sauerwein Decl., Ex. A § 7; see also Omega IM Grp., LLC v. Louidar, LLC, 2018 WL 1069446, at *7 (S.D. Fla. Feb. 16, 2018) (finding forum selection clause to be unenforceably vague in part because it could "permit a suit . . . to be filed in any jurisdiction arguably anywhere in the world").  C.L. is in the best position to identify whether her alleged assault took place in Maryland or Virginia, and she cannot avoid Uber's valid forum selection clause merely through pleading with less specificity than WHB 318.[6]  Therefore, Uber's Motion to Transfer is granted for these Plaintiffs.  Should C.L. wish to assert that the alleged incident occurred within the Eastern District of Virginia rather than the District of Maryland, Plaintiffs shall provide notice to Uber and the Court within fourteen days of this Order.

### 5.      Plaintiff A.G.

Finally, Plaintiffs argue that Plaintiff A.G. is not covered by the forum selection clause because her ex-husband ordered the ride during which she was allegedly assaulted from his own Uber account.  See Opp'n at 21; A.G., Am. Compl. ¶¶ 6-7.  Uber claims that

---

[6]  Uber's offer to allow C.L. to "elect" between the two forums further reduces any potential concerns of unfairness accompanying the transfer of venues.

A.G. is bound to the terms of her ex-husband's TOU agreement, including the forum selection clause, under the principles of equitable estoppel.[7]  See Reply at 15.  "Under the principle of equitable estoppel, a nonsignatory may not claim benefits arising from a contract while simultaneously attempting to avoid the burdens the contract imposes. Rather, a nonsignatory . . . may be compelled to arbitrate where the nonsignatory knowingly exploits the benefits of the agreement and receives benefits flowing directly from the agreement."  Eclipse Consulting, Inc. v. BDO USA, LLP, 2018 WL 6735085, at *6 (D. Or. Nov. 13, 2018) (citations omitted).[8]

Both prongs are satisfied here.  "A nonsignatory knowingly exploits an agreement when it undertakes some affirmative action to benefit from the agreement, and is aware of the agreement from which the benefit is sought."  Id. at *7.  A.G. took affirmative action to benefit from her ex-husbands TOU agreement when she specifically asked him to order her an Uber ride.  See A.G., Am. Compl. ¶ 7 ("At Plaintiff's request, her ex-husband ordered the ride to take her home from the bar." (emphasis added)).  Her awareness of the agreement can be inferred from that fact that she entered into an identical agreement with Uber to form her own account.  See Sauerwein Decl. Ex. J (dkt. 3020-12).  And A.G. "obtained a benefit flowing directly from" her ex-husband's TOU in the form of an Uber ride, the core service underlying the agreement.  Eclipse Consulting, 2018 WL 6735085, at *7.

Because A.G. knowingly exploited her ex-husband's Terms of Use agreement with

---

[7]  While there is no direct evidence on the record that the ex-husband agreed to the Terms of Use, both parties agree that he must have done so in order to facilitate A.G.'s ride.  See Opp'n at 21 n.12; Reply at 15 n.8.

[8]  Plaintiffs cite to Marshall v. Hipcamp Inc. for the proposition that "Oregon courts have not addressed whether a nonsignatory could be bound to arbitrate by a signatory."  735 F. Supp. 3d 1283, 1292 (W.D. Wash. 2024); see also Opp'n at 21.  But Plaintiffs ignore important context from the remainder of that quoted sentence, as Magistrate Judge Fricke went on to explain that "federal district courts have assumed without deciding that Oregon courts would compel a nonsignatory to arbitrate where 'the nonsignatory 'knowingly exploits' the benefits of the agreement and receives benefits flowing directly from the agreement.'"  Marshall, 735 F. Supp. 3d at 1292 (quoting Goergen v. Black Rock Coffee Bar, LLC, 2023 WL 1777980, at *10 (D. Or. Feb. 6, 2023)).  The Court sees no compelling justification to stray from that approach.

1    Uber to extract the direct benefit of an Uber ride, she is equitably estopped to his TOU

2    agreement.  Accordingly, the forum selection clause is applicable to A.G.'s claims, and

3    Uber's Motion to Transfer her case is granted.

## IV.    CONCLUSION

For the forgoing reasons, the Court orders as follows:

Uber's Motion to Transfer is DENIED with respect to Plaintiff A.R.1.

Uber's Motion to Transfer is GRANTED with respect to Plaintiffs WHB 1486,

LCHB128, Jalynn Dean, C.L., A.G., WHB 1898, T.L., WHB 407, WHB 318, WHB 823,

and J.E.  These cases will be transferred to the appropriate districts in accordance with the

forum selection clause at the conclusion of the relevant pre-trial proceedings in the

Northern District of California.

**IT IS SO ORDERED.**

Dated: July 15, 2025

_____
CHARLES R. BREYER
United States District Judge